## Owen's Appeal.

1. Owen had been appointed by the Orphans' Court, trustee under a will. The *cestui que trust*, without notice to him, presented a petition to the same court, alleging that the appointment had been made through misrepresentations, &c., and praying that Owen might be discharged, and directed to pay the fund to the petitioner; immediately upon the presentation of the petition, the court ordered a citation to issue, and directed Owen to pay the petitioner $150 within thirty days. *Held*, that this order was a definitive decree from which he might appeal to the Supreme Court.

2. The order having been summarily made, without notice, not being asked for in the petition, and no reason being shown for in the record, was reversed.

May 18th 1876. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Appeal from the Orphans' Court of *Centre county*. Of May Term 1875, No. 11.

On the 29th of April 1874, William Atherton presented a petition to the Orphans' Court of Centre county, setting forth as follows:

"That a petition, purporting to have been signed by your petitioner, *et al.*, is on record in the Orphans' Court of said county, by which Albert Owen, administrator, &c., of Richard Atherton, deceased, has obtained possession of a large sum of money belonging to your petitioner, to wit: the sum of one thousand pounds sterling in gold, being the amount received by the aforesaid Richard Atherton, deceased, on behalf of your petitioner under the last will and testament of Eleanora Atherton, deceased, late of Manchester, England, which amount the share of your petitioner of said money the said Albert Owen acknowledges in said petition

[Owen's Appeal.]

by placing the same on record and entering bail in the sum of twenty-five thousand dollars, in accordance with the order of your honorable court, to have in his possession and which he holds as the trustee of your petitioner. * * * * And further, the original papers, after diligent search made, cannot be found.

" Your petitioner prays your honors to discharge the said Albert Owen as trustee in this case, as he has no recollection of delegating such powers to the said Owen as he has exercised over the moneys and rights of your petitioner, denying him the right to invest any portion of his money in real estate, or the use of any portion of the same beyond the sum of twenty-five dollars per month, but to declare the said petition, as recorded, to be void and of no effect, as your petitioner verily believes that the same was never signed by him, and that he never intended to give the said Owen any power over said money, more than to transfer the same from the Tyrone Bank to the Philipsburg Bank and which power he did give.

" Your petitioner, therefore, prays that your honors discharge the said Albert Owen from the trusteeship, and that the said money, to-wit: The sum of one thousand pounds sterling gold, as received by Richard Atherton, deceased, from the executors of Eleanora Atherton, deceased, in December 1870, be paid over to your petitioner in currency, with such premium as the gold was worth at the time it was first paid, and with legal interest on the same, either forthwith or at such days and times as to your honors may seem just and proper, compelling the said trustee to show what investment he made of said fund, and show what interest he received from the same." * * *

The court, upon the hearing of the petition, made the following order:—

" And now, April 24th 1874, petition read, and the court, after due consideration, do order and decree that notice of the presentation of this petition be given to Albert Owen to appear at August term next, and answer to a rule of court, to be issued upon him, to show cause, if any he has, why the prayer of the petitioner should not be granted, and the court do order that said Albert Owen pay to the said William Atherton one hundred and fifty dollars within thirty days from date."

The record shows the following entry: "May 5th 1874, I accept service and waive issue on the within order and decree. ALBERT OWEN."

Owen appealed to the Supreme Court and assigned the order for error.

*A. Hay* for appellant.—Owen was not before the court, and had no notice to appear; the court had no power to make the summary order complained of: Const. Penna., 1 art., sect. 11; Const. U. S. 5; Ervine's Appeal, 4 Harris 263; Banning *v.* Taylor, 12 Id. 292; Menges *v.* Dentler, 9 Casey 499. There must be a

citation.    Act of March 29th 1832 : Pamph. L. 207, 2 Br. Purd.
1106, pl. 18 ; Oketon's Appeal, 2 Grant 204.

*J. A. Beaver* (with whom was *J. L. Cuttle*), for appellee.—
This was only an interlocutory decree and cannot be appealed
from.    The Orphans' Court being within the limited sphere of its
jurisdiction a court of equity had the power to make this order :
Brinker *v.* Brinker, 7 Barr 53 ; Ake's Appeal, 24 P. F. Smith 116.

Mr. Justice Woodward delivered the opinion of the court,
October 13th 1875.

The question involved in this appeal arose upon the presentation
to the Orphans' Court of the county of Centre of the petition of
William Atherton, the appellee, setting forth that under proceedings
on a previous petition to the same court, purporting to have been
signed by him, Albert Owen, the appellant, as administrator of
Richard Atherton, deceased, had obtained possession of the sum of
one thousand pounds sterling in gold, which had been received by
Richard Atherton for the petitioner under the last will and testa-
ment of Elenora Atherton, of Manchester, in England ; that the
petitioner verily believed that the original petition was never signed
by him ; and that he had never intended to give the respondent
any power over the money other than to transfer it from a bank in
Tyrone to a bank in Philipsburgh.    On these facts the petitioner
asked a decree discharging the respondent as trustee, declaring the
original petition to be void, directing the payment of the money
to the petitioner, with the premium on gold and interest, and requir-
ing the respondent to show what investment he had made of the
fund, and what interest on account of it he had received.    The
court at once ordered that notice should be given to the respondent
to appear at the next term, and show cause why the prayer of the
petitioner should not be granted.    The decree concluded in these
words : "And the court do order that the said Albert Owen pay to
the said William Atherton one hundred and fifty dollars within
thirty days from date."

It is this order for the payment of one hundred and fifty dollars
of which the appellant complains.    No notice of the petition had
been given to him, and he was afforded no opportunity to meet its
allegations.    Issued thus improvidently, as he claims, he asks that
the order may be annulled.    On behalf of the petitioner, it is ob-
jected that the decree was interlocutory only, and that the appeal
was prematurely taken.

By the 59th section of the Act of the 29th of March 1832, any
person aggrieved by a definitive sentence or decree of the Orphans'
Court may appeal to the Supreme Court.    Under this provision
it has been held that an appeal lies from an order appointing a
guardian : Senseman's Appeal, 9 Harris 331 ; and from an order
of confirmation of any account of an executor or administrator,

28 P. F. Smith—33

whether final or partial: Rhoads's Appeal, 3 Wright 186.   Later authorities have modified those cases, and defined their scope and limited their effect, but the special points which they decided have not been overruled.   The 9th section of the Act of 27th of March 1713, which was in force until the passage of the Act of 1832, had given an appeal to any person "aggrieved with any definitive sentence or judgment of the Orphans' Court," and in Hess's Appeal, 1 Watts 255, it was decided that an appeal from an order of sale of decedent's real estate could be sustained.   In Patterson's Case, 1 Weekly Notes 454, a judgment on an award of arbitrators had been obtained against a defendant in an action in the Common Pleas of Lancaster.   An application was made to open the judgment and set aside the award on the ground that the writ had not been served and the attorney who had accepted service for the defendant had acted without authority.   The application was granted, the court directing at the same time, without hearing or notice, that the attorney should pay the costs.   Upon a writ of error brought by the attorney, the original action remaining undetermined, the judgment was reversed for the reason, as stated by Gordon, J., that "we have in Pennsylvania neither statute nor common law to sustain it."   The appellant's application for redress would seem warranted by the precedents.

On what principle can this decree be held otherwise than definitive?   It was an express, absolute and unconditional order on one man to pay money to another.   To the extent of $150 it was a final adjudication of the title to the fund in controversy.   It is true the payment was to be made within thirty days.   But that was a provision for stay of execution simply, and at the expiration of the stay the respondent would become subject to an attachment, a writ of sequestration, or a writ of execution in the nature of a fieri facias, which a single judge, by the 57th section of the Act of 29th of March 1832, is authorized to allow.   Whatever the event of the main dispute, the disposition of this sum of $150 was absolute.   The order contained no reservation of the power of the court to restore it to the respondent if his right to it in the end should be ascertained.   It is to be observed that this allowance was not asked for by the petitioner.   It was made by the court, without explanation given or ground stated.   There may have been reasons for it, but the case must be treated on the facts it discloses, and those facts show a mode of dealing with the rights of the parties that was too summary to be safe.   It is unnecessary even to allude to the general merits of the controversy.   The order was an excrescence on the record, and all that can be done with it is to set it utterly aside.   The legitimate proceeding can be pursued in the legitimate way.

The order for the payment of $150 by the appellant is reversed, at the costs of appellee.